# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

SONS OF CONFEDERATE VETERANS,
FLORIDA DIVISION, INC., JOHN W.
ADAMS,

        Plaintiffs,

-vs-                                      Case No. 6:09-cv-134-Orl-28KRS

JEFFREY H. ATWATER, LARRY CRETUL,
ANDY GARDINER, RICHARD GLORIOSO,
and ELECTRA THEODORIDES-BUSTLE,

        Defendants.
_____

## ORDER

Plaintiffs, the Sons of Confederate Veterans, Florida Division, Inc. ("SCV") and John Adams ("Adams"), Vice President of SCV, bring the instant action seeking declaratory and injunctive relief due to the Florida Legislature's failure to approve a "Confederate Heritage" specialty license plate. Named as Defendants are: Jeffrey Atwater, President of the Florida Senate; Larry Cretul, Speaker of the Florida House of Representatives; Andy Gardiner, Chairman of the Senate Transportation Committee; Richard Glorioso, Chairman of the House Committee on Infrastructure (collectively, "the Legislator-Defendants"); and Electra Theodorides-Bustle, Executive Director of the Florida Department of Highway Safety and Motor Vehicles ("Defendant Executive Director"), all of whom are sued solely in their official

capacities.[1]

The case is before the Court on the Motions to Dismiss (Docs. 10 & 11) filed by the Legislator-Defendants and Defendant Executive Director. Having considered these motions and Plaintiffs' responses thereto (Docs. 15 & 16), the Court concludes that the Legislator-Defendants' motion must be granted and Defendant Executive Director's motion must be denied.

## I. Background

In 1995, the Florida Legislature, through the enactment of several statutory provisions, established a scheme for the creation of "specialty license plates." An organization wishing to establish a specialty plate must submit an application to the Department of Highway Safety and Motor Vehicles ("the Department"), including an application fee, a sample design, a survey showing that at least 30,000 motor vehicle owners intend to purchase the proposed plate, and a marketing strategy. § 320.08053(1), Fla. Stat. If these requirements are satisfied, a specialty plate can then be created by the Legislature through passage of legislation amending sections 320.08056 and 320.08058, Florida Statutes, although the

---

[1] Atwater, Gardiner, and Glorioso were originally named as Legislator-Defendants along with Ray Sansom and Michael Davis. (See Compl., Doc. 1). However, on February 13, 2009, Plaintiffs advised the Court that Sansom, who formerly was the Speaker of the Florida House of Representatives, had resigned and that Cretul and been appointed Speaker Pro Tempore. (Notice, Doc. 8). Plaintiffs also advised that Davis—formerly a co-chairman of the Committee on Infrastructure along with Glorioso—had passed away and that Glorioso is now the sole chairman. (Id.). Under Federal Rule of Civil Procedure 25(d), when an officer who is sued in his official capacity "dies, resigns, or otherwise ceases to hold office while [an] action is pending . . . [t]he officer's successor is automatically substituted as a party." Atwater, Cretul, Gardiner, and Glorioso are now the appropriate Legislator-Defendants and are the named filers of the Legislator-Defendants' motion to dismiss (Doc. 10).

statutory scheme is not specific as to how such enactment is to occur or what criteria, if any, are to be applied in the course of such enactment.[2] The statutes do provide, however, that "[i]f the specialty license plate requested by the organization is approved by law," the organization then submits proposed art for the specialty plate to the Department and "[t]he [D]epartment is responsible for developing the specialty license plates" and must "begin production and distribution of each new specialty license plate within 1 year after approval of the specialty license plate by the Legislature." §§ 320.08053(2), 320.08056(1), Fla. Stat. "If the specialty license plate requested by the organization is not approved by the Legislature, the application fee shall be refunded to the requesting organization." Id. § 320.08053(2).

Pursuant to this statutory scheme, Plaintiff SCV submitted application materials to the Department for creation of a "Confederate Heritage" specialty license plate depicting five distinct Confederate flags and representations of coat buttons issued to Confederate troops from Florida. (Compl. ¶ 17). On February 26, 2008, State Representative Donald Brown introduced House Bill 1159 to amend section 320.08056, Florida Statutes, to establish the "Confederate Heritage" plate. (Id. ¶ 19). The bill was referred to the House Committee on Infrastructure, and on March 10, 2008, the Department notified the Committee that SCV had satisfied the statutory application requirements. (Id. ¶ 18). The Committee took no further

---

[2]As the Eleventh Circuit Court of Appeals has stated, "If the sponsoring organization satisfies the[] requirements [of section 320.08053(1)], the Department submits the plan to the Florida legislature, which has unfettered discretion to enact a law authorizing the specialty plate, or to reject the plan *in toto*." Women's Emergency Network v. Bush, 323 F.3d 937, 941 (11th Cir. 2003) (citations omitted).

action regarding the bill, and the bill "died in committee"; according to the Complaint, Defendant Glorioso, the then-Chairman of the Committee, "refused to bring the bill up for a vote" because the plate was "controversial," (id. ¶ 20). SCV's application fee was not returned. (Id. ¶ 21).

On January 20, 2009, Plaintiffs filed this suit pursuant to 42 U.S.C. § 1983. In Count I of their Complaint, Plaintiffs assert that "Sections 320.08053-320.08058, Florida Statutes, unconstitutionally grant the Florida [L]egislature 'unfettered discretion' to refuse to statutorily amend those statutes so as to create a specialty plate (even though the statutory requirements have already been met by the sponsoring organization)." (Id. ¶ 28). Plaintiffs request a declaration "that the legislature's refusal to enact the necessary statutory amendments to create SCV's 'Confederate Heritage' plate . . . is a denial of SCV's free speech and equal protection rights." (Id.). SCV also claims entitlement "to a mandatory injunction against [the Legislator-Defendants] compelling them to have the legislature enact the legislation necessary to create SCV's proposed . . . plate" and a mandatory injunction against Defendant Executive Director "to issue the plate." (Id. ¶ 29). In the alternative, SCV seeks a declaration "(1) that those portions of the subject statutes requiring the legislature's involvement in their 'unfettered discretion' in the specialty plate approval process are unconstitutional; (2) that those portions be severed from the subject statutes; and, (3) that a mandatory injunction issue against Defendant, Bustle, that she directly issue the subject plate without legislative approval." (Id. ¶ 30). In Count II of their Complaint, Plaintiffs seek—in the alternative to Count I—a declaration that Sections 320.08053, 320.08056, and

320.08058,[3] Florida Statutes, are "unconstitutional in toto" because "they unconstitutionally inhibit SCV's free speech rights by 'condition[ing] that speech on obtaining a license or permit from a government official in that official's boundless discretion.'"  (Id. ¶ 39 (citation omitted, emphasis removed, and alteration in original)).

Defendant Executive Director has filed a Motion to Dismiss (Doc. 11), arguing that Plaintiffs' claims are not ripe.  The Legislator-Defendants have also moved to dismiss the Complaint, alleging lack of ripeness as well as two other grounds—that they are entitled to absolute legislative immunity and that even absent immunity, they are not proper parties to the suit.  (Doc. 10).  Plaintiffs have responded to both motions.  (Docs. 15 & 16).

## II.  Discussion

### A.  Ripeness/Standing[4]

All of the Defendants contend that Plaintiffs' claims should be dismissed as unripe. Specifically, Defendants assert that the Legislature's failure to approve the bill proposing Plaintiffs' specialty plate the first time it was introduced cannot give rise to a ripe claim. Although this argument might be persuasive in most contexts, the nature of the claims asserted by Plaintiffs in this case requires that it be rejected.

---

[3]The Complaint lists section 320.08056 twice in this paragraph; presumably Plaintiffs intended to list section 320.08058 rather than listing section 320.08056 a second time.  (See Doc. 1 ¶ 39).

[4]Defendants couch this portion of their motions to dismiss in terms of both ripeness and standing.  As one commentator has noted, "in practice there is an obvious overlap between the doctrines," and "[t]o the extent that the substantive requirements overlap and the result will be the same . . . , little turns on the choice of label."  Erwin Chemerinsky, Federal Jurisdiction 117-18 (5th ed. 2007).

Article III of the United States Constitution limits federal jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2; see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60 (1992) (discussing the origins and limits of the "Cases" and "Controversies" requirement). Before hearing a case, a court must determine "whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court." Cheffer v. Reno, 55 F.3d 1517, 1524 (11th Cir. 1995). The main rationale behind this requirement is to "prevent[] federal courts from rendering impermissible advisory opinions and wasting resources through review of potential or abstract disputes." Nat'l Adver. Co. v. City of Miami, 402 F.3d 1335, 1339 (11th Cir. 2005). "When a plaintiff is challenging a government act, the issues are ripe for judicial review if 'a plaintiff . . . show[s] he has sustained, or is in immediate danger of sustaining, a direct injury as the result of that act.'" Nat'l Adver. Co., 402 F.3d at 1339 (quoting Hallandale Prof'l Fire Fighters Local 2238 v. City of Hallandale, 922 F.2d 756, 760 (11th Cir. 1991) (alterations in original)).

Defendants insist that Plaintiffs do not have Article III standing because they have not alleged any "real and immediate" injury or threat of injury that gives rise to a ripe cause of action. Defendants assert that "there is no factual basis to conclude with any certainty that the SCV plate will not pass the Legislature during a future session." (Doc. 10 at 8). Defendants point out that with regard to at least one other specialty plate—the "Live the Dream" plate—the enabling legislation was not enacted when it was first proposed in 2003, but it was enacted in 2004. In essence, Defendants urge that Plaintiffs' claims about the Legislature's actions concern "uncertain or contingent future events that may not occur as

anticipated, or indeed may not occur at all," making them unripe for review.  13B Charles Wright, Arthur Miller & Edward Cooper, Federal Practice and Procedure § 3532 (3d ed. 2008).

However, Plaintiffs allege that they have been denied an opportunity for First Amendment expression that has been granted to others and that the specialty license plate statutory scheme vests unbridled discretion in the legislature to grant or deny the opportunity for that expression.  Where First Amendment rights of expression are assertedly at stake, "[t]he injury requirement [of the "case" or "controversy" analysis] is most loosely applied." Hallandale Prof'l Fire Fighters Local 2238 v. City of Hallandale, 922 F.2d 756, 760 (11th Cir. 1991).

The opinion of the Eleventh Circuit Court of Appeals in Women's Emergency Network v. Bush, 323 F.3d 937 (11th Cir. 2003), is instructive with regard to the issue of Plaintiffs' standing to pursue their claims.  There, the plaintiffs challenged the Florida legislature's passage of an amendment to section 320.08058 that created a "Choose Life" specialty plate. The district court dismissed the case on the basis that the plaintiffs lacked standing, and the Eleventh Circuit affirmed, noting that the plaintiffs had not been denied—nor had they even attempted to avail themselves of—the opportunity "'to present their view in the specialty plate forum.'"  Id. at 946 (quoting the district court decision).  The Eleventh Circuit rejected the plaintiffs' attempt to rely on cases allowing "plaintiffs subject to speech-restrictive laws to challenge the laws without applying for and being denied an opportunity to speak," and in doing so the court explained that in those cases "the constitutional challenge was to the government program that created the speech forum, not to the state's authorization of the

use of the forum by a third party." Id. at 947.  The Bush court explained:

> If Appellants were challenging Fla. Stat. § 320.08053, the statute that creates the forum, the [City of Lakewood v. Plain Dealer Publ'g Co.[5]] line of cases might be relevant.  Appellants' only challenge, though, is to the Choose Life statute, Fla. Stat. § 320.08058(30). The Choose Life statute does not in any way restrict or prohibit Appellants' speech. Nothing in the Choose Life statute prevents Appellants from applying for or gaining entrance to the specialty license plates forum.  The First Amendment protects the right to speak; it does *not* give Appellants the right to stop others with opposing viewpoints from speaking.

Id.  The instant case, in contrast, *is* akin to the line of cases on which the Bush plaintiffs attempted to rely.

Unlike the Bush plaintiffs, Plaintiffs here *are* challenging section 320.08053 and the entire legislative scheme regarding specialty license plates, and they are asserting suppression of their own expression rather than seeking to suppress the speech of others. (See, e.g., Compl. ¶¶ 28 & 38 (alleging that "Sections 320.08053-320.08058, Florida Statutes, unconstitutionally grant the Florida legislature 'unfettered discretion'")). In the Plain Dealer case cited in Bush, the Supreme Court explained that "a law or policy permitting communication in a certain manner for some but not for others raises the specter of content and viewpoint censorship" and that "[t]his danger is at its zenith when the determination of who may speak and who may not is left to the unbridled discretion of a government official." 486 U.S. 750, 763 (1988).  And, "'[i]n the area of freedom of expression it is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion . . . , whether or not his conduct could be proscribed by a properly drawn

---

[5]Plaintiffs cite City of Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750, 764 (1988), in their Complaint.  (Doc. 1 ¶ 39).

statute, and whether or not he applied for a license.'" Id. at 764 (quoting Freedman v. Maryland, 380 U.S. 51, 56 (1965)) (alteration in original); accord Naturist Soc'y, Inc. v. Fillyaw, 958 F.2d 1515, 1521 (11th Cir. 1992) ("Where . . . a licensing statute 'allegedly vests unbridled discretion in a government official to permit or deny expressive activity,' the plaintiff may proceed in a lawsuit regardless of whether the government granted a permit, denied a permit, or the plaintiff never applied for a permit." (quoting Sentinel Commc'ns Co. v. Watts, 936 F.2d 1189, 1197 (11th Cir. 1991))).

Defendants' assertion that the legislation necessary to create Plaintiffs' proposed specialty plate *might* pass in a future session does not render Plaintiffs' claims unripe. As Plaintiffs note, there is no timeframe of any kind within which Plaintiffs' application must be definitively decided; in the First Amendment context, a scheme lacking temporal boundaries can amount to an unconstitutional prior restraint on speech and does not prevent a challenge even absent an affirmative denial of an application or permit. Cf. Freedman v. Maryland, 380 U.S. 51, 59 (1965).

Although the Court does not reach the merits of Plaintiffs' claims at this juncture,[6] the

---

[6]Plaintiffs' assertion that the specialty license plate scheme implicates free speech rights and their attendant protections is neither novel nor far-fetched. Courts have reached varying conclusions with regard to whether specialty license plates constitute government speech or private speech. Compare, e.g., Choose Life Ill., Inc. v. White, 547 F.3d 853, 864-65 (7th Cir. 2008) (concluding that specialty license plates in Illinois are neither a traditional public forum nor a designated public forum), cert. denied,130 S. Ct. 59 (Oct. 5, 2009), and Am. Civil Liberties Union of Tenn. v. Bredesen, 441 F.3d 370 (6th Cir. 2006) (holding, over a vigorous dissent, that no First Amendment speech forum was created by Tennessee's specialty license plate program), with Ariz. Life Coalition Inc. v. Stanton, 515 F.3d 956, 960 (9th Cir. 2008) (holding that "[m]essages conveyed through special organization plates . . . represent primarily private speech" and that "Arizona has created a limited public forum" with its specialty plate program), cert. denied, 129 S. Ct. 56 (Oct. 6, 2008), and Planned

allegations that Florida's statutory scheme allows for unfettered discretion and content-based discrimination is sufficient to establish Plaintiffs' standing and the ripeness of Plaintiffs' claims even absent a formal denial of Plaintiffs' specialty plate application. Defendants' motions to dismiss are denied to the extent they are grounded on lack of ripeness.

### B.  Absolute Legislative Immunity

The Legislator-Defendants urge the Court to dismiss the claims against them on the basis that they are entitled to absolute legislative immunity.  The Supreme Court has "recognized that state legislators enjoy common-law immunity from liability for their legislative acts" and that this immunity can shield officials against suits brought under 42 U.S.C. § 1983 seeking damages, declaratory relief, or injunctive relief. Supreme Court of Va. v. Consumers Union of the U.S., Inc., 446 U.S. 719, 732 (1980) (citing Tenney v. Brandhove, 341 U.S. 367 (1951)).

Plaintiffs challenge the Legislator-Defendants' immunity argument, arguing that legislative immunity is available only when legislators are sued in their personal capacities and not in their official capacities.  Plaintiffs rely on the Eighth Circuit's recent decision in Roach v. Stouffer, 560 F.3d 860 (8th Cir. 2009), a case with similar facts in which Missouri plaintiffs challenged the denial of their application for a "Choose Life" specialty plate and sought prospective relief nearly identical to that which Plaintiffs seek in the instant case. The Eighth Circuit held that the legislator-defendants in that case were not entitled to legislative

---

Parenthood of S.C. Inc. v. Rose, 361 F.3d 786, 794 (4th Cir. 2004) (concluding that "speech" on South Carolina specialty plate was "neither purely government speech nor purely private speech, but a mixture of the two").

immunity because they were sued only in their official capacities. Id. at 870.

Notwithstanding the factual similarities between Roach and the instant case, however, this Court must follow the precedent of the Eleventh Circuit, not the Eighth, and the Eleventh Circuit decision in Scott v. Taylor, 405 F.3d 1251 (11th Cir. 2005), controls here. Scott involved a claim brought pursuant to 42 U.S.C. § 1983 against the Georgia Lieutenant Governor, the Speaker of the State House of Representatives, and the DeKalb County House and Senate Delegation Chairpersons in their official capacities, alleging racial discrimination in adoption of a new county district voting map. Id. at 1253. The Scott court framed the issue before it as "whether individual state legislators are entitled to absolute legislative immunity from official capacity suits for prospective relief," id. at 1252, and squarely held that "[b]ecause [the a]ppellants are state legislators who acted in their legislative capacities, they are entitled to absolute legislative immunity," adding that "[t]his is true regardless of whether a suit seeks damages or prospective relief and *regardless of whether the state legislators are named in their individual or official capacity*," id. at 1257 (emphasis added).

The Eleventh Circuit's holding in Scott is broad and does not limit immunity based on the type of relief sought or on whether a legislator is sued in his official or personal capacity. The Scott court noted that the personal/official capacity distinction undermines the rationale behind legislative immunity, explaining that because the doctrine's very purpose is "to free legislators from such worries and distractions, it makes sense to apply [it] regardless of the capacity in which a state legislator is sued." Id. at 1256. Under Scott, in order to be eligible to invoke legislative immunity, the Legislator-Defendants need only demonstrate that the

actions giving rise to Plaintiffs' claims were undertaken in their "legislative capacities." Although Plaintiffs contend that the actions at issue were administrative rather than "legislative" in nature and that therefore the Legislator-Defendants should not enjoy the benefit of legislative immunity, this contention does not withstand analysis.

"It is the nature of the act which determines whether legislative immunity shields the individual from suit." Yeldell v. Cooper Green Hosp., Inc., 956 F.2d 1056, 1062 (11th Cir. 1992). Legislative immunity applies to "those acts which are 'necessary to preserve the integrity of the legislative process.'" Id. (quoting United States v. Brewster, 408 U.S. 501, 517 (1972)). And, there is no "good faith" prerequisite for legislative immunity claims; therefore, "[e]ven if the [legislators] acted out of evil intent, the legislative nature of the act still controls." Woods v. Gamel, 132 F.3d 1417, 1419 n.4 (11th Cir. 1998). Acts that are deemed "legislative" include speech-making on an assembly floor, preparing legislative reports, and participating in committee proceedings, whereas distributing press releases, denying liquor licenses, and administering penal facilities have generally not been entitled to legislative immunity. Yeldell, 956 F.2d at 1062.

Plaintiffs' claims against the Legislator-Defendants are based on the Legislator-Defendants' alleged refusal to bring Plaintiffs' specialty plate bill before the Legislature for a vote. In Yeldell, the Eleventh Circuit explained:

> [T]he decision whether or not to introduce legislation is one of the most purely legislative acts that there is. . . . [S]uch decisions are an important part of the process by which legislators govern legislation and, therefore, entitle the decision-maker to the protection of legislative immunity. To conclude otherwise would require us to ignore the central purpose of the doctrine of legislative immunity. . . . When individuals can sue members of a legislative body to ensure that a certain piece of

>legislation is brought before that body for a vote, the process is no longer democratic.

956 F.2d at 1063. Here, legislation was introduced—by a non-Defendant legislator—but the Legislator-Defendants allegedly refused to bring the proposed legislation up for vote or otherwise refused to act on it. In doing so, as discussed in Yeldell they were acting in their "legislative capacities" and thus they enjoy absolute legislative immunity.[7] Their motion to dismiss must be granted on this basis.[8]

### III.  Conclusion

Both the Legislator-Defendants' motion and Defendant Theodorides-Bustle's motion (Doc. 11) are **DENIED** insofar as they are based on lack of ripeness. However, the Legislator-Defendants enjoy absolute legislative immunity from this suit, and on that basis their motion to dismiss (Doc. 10) is **GRANTED**. The claims against all Defendants except Defendant Theodorides-Bustle are hereby **DISMISSED**.

---

[7] Insofar as Plaintiffs are challenging the already-enacted specialty license plate scheme—that is, the legislative framework that is in place and requires further legislative action in order for a plate to be created—legislators would even more clearly be entitled to absolute legislative immunity, as enactment of that more general legislation is clearly an action undertaken in a "legislative capacity."

[8] The Legislator-Defendants also argue that they should be dismissed from this case because they are not proper parties to the suit. In light of the Court's conclusion that these Defendants are immune from suit, this issue need not be reached.

**DONE** and **ORDERED** in Orlando, Florida this 1st day of December, 2009.

_____
JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record